UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GRAIG COWIT, individually and on behalf of those similarly situated

  Plaintiff,

vs.

CITIMORTGAGE, INC.,

  Defendant.

Case No. 1:12-cv-869

Judge Timothy S. Black

**ORDER THAT PLAINTIFF'S MOTION TO REMAND (Doc. 25) IS DENIED**

This civil action is before the Court on Plaintiff's motion to remand (Doc. 25), and the parties' responsive memoranda (Docs. 29, 30).[1]

Plaintiff argues that removal by Defendant CitiMortgage, Inc. ("CMI") was improper and moves the Court to remand the case back to the Hamilton County Court of Common Pleas. Specifically, Plaintiff argues: (1) removal was untimely; (2) Defendant failed to adequately demonstrate that the amount in controversy likely satisfies CAFA's $5 million threshold; and (3) Defendant waived its right to remove by participating in the state court proceedings.

---

[1] Plaintiff seeks oral argument on this motion. (Doc. 25). Local Rule 7.1(b)(2) provides for oral argument where it "is deemed to be essential to the fair resolution of the case because of its public important or the complexity of the factual or legal issues presented." Here, the Court finds that the pleadings are clear on their face, and that oral argument is not necessary. *See Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, at *7 (S.D. Ohio July 27, 2006) (C.J. Dlott) ("Local Rule 7.1(b)(2) leaves the Court with discretion whether to grant a request for oral argument.").

I.  BACKGROUND FACTS

Plaintiff filed his initial Complaint in the Hamilton County Court of Common Pleas on April 17, 2012. (Doc. 5). In the Complaint, Plaintiff alleged that he had defaulted on a mortgage loan from CMI and that CMI had subsequently filed a foreclosure action against him and his wife. (*Id*. at ¶¶ 22-24). On March 18, 2011, CMI paid $580.00 in "Court Costs" to the foreclosure court. (*Id*. at ¶ 25). Plaintiff then received a letter dated April 4, 2011 from CMI's foreclosure counsel, Lerner, Sampson & Rothfuss, which quoted a payoff amount of $232,166.15 for Plaintiff's loan. (*Id*. at ¶ 28). The letter also broke down that amount into categories, one of which was labeled "Foreclosure Costs," with an amount listed of $1,899.00. (*Id*.) Plaintiff paid off his loan on April 19, 2011 by paying $232,166.15 to CMI. (*Id*. at ¶ 30). On April 26, 2011, CMI dismissed the foreclosure action. (*Id*.)

According to Plaintiff, the foreclosure court paid $33.00 to CMI's foreclosure counsel on April 29, 2011. (Doc. 5 at ¶ 31). Plaintiff further alleges that CMI "never refunded to [Plaintiff] the $33.00 of Refunded Court Costs." (*Id*. at ¶ 33). Plaintiff claims that failure to pay him for "Refunded Court Costs" violated "promise[s]" and "representation[s]" in his note and mortgage. (*Id*. at ¶¶ 34-37). As a result, Plaintiff has brought nine causes of action against CMI and requests compensatory damages of an unstated "amount to be ascertained which includes but is not limited to the Refunded Court Costs." (*Id*. ¶¶ at 49-109; Prayer for Relief).

Plaintiff also claims that CMI "engaged and continues to engage" in a "common scheme and course of conduct," in which it fails to pay "Refunded Court Costs" to "borrowers." (Doc. 5 at ¶¶ 38-40). Plaintiff seeks to represent a national class of CMI "borrowers" whose "residential mortgage loans" were foreclosed upon and who paid "Court Costs" to CMI, which then received a "refund" of those "Court Costs" but "failed to refund the refunded court costs to the borrower." (*Id.* at ¶ 43(1)). Plaintiff also seeks to represent an Ohio subclass. (*Id.* at ¶ 43(1)(A)).

On May 9, 2012, Plaintiff filed an Amended Complaint, which is largely identical to the Complaint, except that Plaintiff made certain changes to the putative class definition, including substituting "Court Action" for "foreclosure" and removing any geographic limit from the class definition. (Doc. 6 at ¶ 43.2). Plaintiff defined the putative class as: "All Borrowers of CitiMortgage who were charged Court Costs by CitiMortgage in connection with a Court Action and a portion of these Court Costs was refunded to CitiMortgage (the "Refunded Court Costs") and CitiMortgage failed to refund those Refunded Court Costs to the Borrower, or legally credit the Refunded Court Costs to the Borrower's then existing loan balance (the "Class")." (*Id.* at ¶ 43.1).

The Amended Complaint contained substantially the same Prayer for Relief as the Complaint and, aside from the allegation that Defendant failed to pay Plaintiff $33.00 in "Refunded Court Costs," the Amended Complaint contains no allegations about the amount in controversy.

Defendant filed a motion to dismiss the Amended Complaint on June 21, 2012,

which the state court denied on September 6, 2012. Defendant then filed its Answer and Affirmative Defenses on September 24, 2012. On October 16, 2012, Defendant filed a Consolidated Motion for a Protective Order and Motion to Stay Class Discovery ("Consolidated Motion"). On November 6, 2012, Plaintiff filed a memorandum contra to Defendant's Consolidated Motion. (Doc. 18). Attached to that brief was a declaration from Brian Giles, one of Plaintiff's attorneys. (*Id*., Ex. A). In the Opposition Brief, for the first time in the case, Plaintiff alleged that "the class and subclass temporal limitations are coextensive" with the 15-year statute of limitations in Ohio Rev. Code § 2305.06. (*Id.*) Plaintiff also alleged, for the first time, that the class allegations were "limited to the United States." (*Id.*) In his declaration, Giles stated that he searched court records in Butler County, Ohio in the last two years for cases in which CMI allegedly initiated a "Court Action" and received "Refunded Court Costs." (*Id*., Ex. A at ¶¶ 1-2). Giles identified 462 cases in which Defendant was allegedly "repaid" some amount of "Court Costs." (*Id.* at ¶¶ 2-3). In those cases, Defendant allegedly received the total sum of $197,891.67 from the Clerk of Courts. (*Id.* at ¶ 5).

On November 13, 2012, five business days after Plaintiff filed the Opposition Brief and Giles declaration, Defendant removed the case to this Court. Defendant maintains that removal was appropriate under CAFA because: (1) the putative class consists of at least 100 members (28 U.S.C. § 1332(d)(5)(B)); (2) the citizenship of at least one putative class member differs from CMI's citizenship (28 U.S.C. §

1332(d)(2)(A)); and (3) the aggregate classwide amount in controversy exceeds $5 million (28 U.S.C. § 1332(d)(2), (6)).  (Doc. 1 at ¶ 1).  On November 30, 2012, Plaintiff filed a Motion to Remand.

## II.     STANDARD OF REVIEW

Defendants removed this action based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  CAFA provides in relevant part that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).  The proposed class must also include at least 100 members. 28 U.S.C. § 1332(d)(5)(B).

When the underlying complaint seeks an indeterminate amount of damages, the removing defendant has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement has been met.  *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001).  CAFA does not alter this burden. *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006).  "All doubts as to  the propriety of removal are resolved in favor of remand." *Jacada, Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 704 (6th Cir. 2005).

## III. ANALYSIS

### A. Timeliness

Pursuant to 28 U.S.C. § 1446(b), Defendant has thirty days to file a notice of removal.  However, "if the case started by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).

#### *1. Initial complaint*

First, Plaintiff argues that Defendant's removal was untimely because "the case started by the initial pleading" (the Complaint) was removable and Defendant did not remove within 30 days of receiving the Complaint.  (Doc. 25 at 8-13).

The general rule is that "[t]he removability of the action must be readily ascertainable from the face of the pleading."  *Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins.*, 5 F.3d 963, 968 (6th Cir. 1993).  Plaintiff's Complaint did not state a removable case because it did not explicitly disclose that Plaintiff was seeking damages exceeding CAFA's $5 million threshold.  Aside from Plaintiff's claim that Defendant failed to pay him $33.00 in "refunded court costs," the Complaint does not contain any specific allegations about the amount in controversy.

Second, Plaintiff argues that "removability was ascertainable" from the Complaint because it contained allegations that Defendant "services 43 million mortgages" and "acquired" loans from ABN AMRO Mortgage Group.  (Doc. 25 at 8).  However, such

-6-

allegations do not address any individual damages or the number of times Defendant allegedly received "refunded court costs."

Finally, Plaintiff argues that the Complaint states that "thousands" of Defendant's customers "paid foreclosure costs." (Doc. 5 at ¶ 40). However, this allegation does not provide "affirmative" proof that the amount in controversy exceeds $5 million because: (1) the number of customers who "paid foreclosure costs" does not correlate with the number of putative class member "borrowers" to whom Defendant allegedly failed to pay "refunded court costs"; and (2) even if the Complaint alleged the existence of thousands of putative class members, this allegation would not establish an amount in controversy exceeding CAFA's $5 million threshold.[2]

Plaintiff cites *Geriak v. Arnco*, No. 1:10cv2856, 2011 U.S. Dist. LEXIS 43715, at *4 (N.D. Ohio Mar. 3, 2011), to support his claim that the Complaint provided "unambiguous information" that the case was removable. In *Geriak*, plaintiff's complaint sought damages from his former employer for his lost salary and other compensation and benefits. Attached to the Complaint were plaintiff's employment agreement which set his annual salary at $65,000, and earning statements that indicated he earned over $20,000 a month in commissions. *Id*. at 2, 4. The court found that this information triggered the removal period because it established an amount in controversy of at least $75,000, which

---

[2] For example, if one were to assume a putative class of 1,000 members with an average $33.00 in compensatory damages, the classwide compensatory damages would total only $33,000. Even assuming 100,000 putative members, the damages would total only $4,300,000, which is short of CAFA's threshold.

made the case removable under 28 U.S.C. § 1332(a). *Id.* However, *Geriak* is inapposite to the case at hand because Plaintiff has not pointed to any similar "unambiguous information" about the amount of damages contained in or attached to his complaint that would have established removability when those pleadings were filed.

Therefore, the Complaint failed to "affirmatively reveal the facts necessary for federal court jurisdiction." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690-91 (9th Cir. 2005).

### 2. *Papers filed or exchanged*

Next, Plaintiff suggests that some of the "papers" filed or exchanged in the case put Defendant "on notice" that the case was removable.

First, Plaintiff points to an affidavit from one of his attorneys, Jeffrey P. Harris, in which Harris alleges that Plaintiff's counsel met with Defendant's counsel after an August 29, 2012 hearing and allegedly "alerted [CMI] about the potential extensive scope of the wrongful practice at issue." (Doc. 25 at 9). This vague allegation is insufficient to demonstrate that removability was ascertainable on August 29, 2012. Harris does not allege that he "alerted" Defendant to any particular number of putative class members or to any particular alleged amount in controversy, much less that he informed Defendant that the alleged amount in controversy exceeded $5 million.

Second, Plaintiff argues that removability was ascertainable from Plaintiff's requests for admission where Plaintiff asked Defendant to admit or deny that the putative class included over 1,000, 5,000, 50,000, or 100,000 members. However, these requests

were not allegations about the putative size, but rather demands that Defendant make certain factual admissions, and, therefore, these requests did not reveal anything about the size of the alleged class or the alleged amount in controversy. Even if these requests could be construed as allegations about class size, they still would not have established an amount in controversy exceeding $5 million.

Finally, Plaintiff claims that Defendant's arguments in the Motion to Strike the Class Allegations and Consolidated Motion establish that it had notice of removability when it filed the motions. Specifically, Plaintiff claims that Defendant's argument that Plaintiff's improper discovery requests would have required Defendant to search "thousands of individual loan files" demonstrates Defendant's knowledge of removability. However, as previously explained, even assuming a putative class of "thousands" of members does not establish an amount in controversy which exceeds CAFA's $5 million threshold. Defendant's arguments in those briefs involved the inability to determine putative class membership without conducting an unduly burdensome, loan-by-loan investigation.[3]

---

[3] Plaintiff also argues that an "initially non-removable" case "cannot subsequently become removable or be transformed into a removable case unless a change occurs . . . as a result of plaintiff's voluntary act." (Doc. 25 at 10-22) (*citing Henderson v. City of Chattanooga*, No. 1:02cv45, 2002 U.S. Dist. LEXIS 26339, at *16 (E.D. Tenn. June 11, 2001)). In *Henderson*, the defendant removed the case after a group of plaintiffs intervened in a previously filed state court action and asserted a federal claim. *Id.* at 4-7. The court found that removal of the initial plaintiffs' claims was improper because those plaintiffs had not introduced any federal claims into the case. *Id.* at 29. *Henderson* is inapposite because the instant case does not involve any "alteration" or "change" in Plaintiff's claims. Rather, this case involves a determination of when removability was ascertainable, which is governed by 28 U.S.C. § 1446(b).

### 3. *Comity and Judicial Economy*

Finally, Plaintiff argues that because this case involves only state law claims, "principles of comity and judicial economy require remand." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 160 (5th Cir. 2011). *Enochs* involved a case that had been removed based on federal claims in the complaint. *Id.* at 157. The Fifth Circuit directed the district court to allow the plaintiff to delete the federal claims and remand the case back to state court. *Id.* at 163. *Enochs* does not apply to this case, which involves removal based on diversity jurisdiction established by CAFA. Indeed, Congress enacted CAFA to "open the federal courts to qualifying class actions" involving state law claims that would not otherwise be removable. *Deutsche Bank Nat. Trust Co. v. Weickert*, 638 F. Supp. 2d 826, 830 (N.D. Ohio 2009).

Therefore, neither the Complaint, the Amended Complaint, nor any other document filed in this matter before November 6, 2012, was sufficient to establish removability. Accordingly, Defendant's removal was timely under 28 U.S.C. Section 1446(b)(3).

**B.    Amount in Controversy**

### 1. *"More likely than not"*

CAFA created a new "basis for federal diversity jurisdiction," but "the general rules governing the determination of the amount in controversy for diversity purposes were not altered by CAFA's adoption." *Franklin v. CitiMortgage, Inc.*, No. 1:11cv608,

2012 U.S. Dist. LEXIS 270, at *2 (S.D. Ohio Jan. 3, 2012). "When a complaint does not specifically allege damages in either more or less than the applicable threshold, a removing defendant must establish by a preponderance of the evidence that the threshold is satisfied." *Id.* "It is not incumbent upon a defendant to establish to a legal certainty that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 5. Such a burden is nonsensical because it could "require the defendant to research, state and prove the plaintiff's claim for damages." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 159 (6th Cir. 1993). Rather, the defendant need only show that it is "more likely than not" that the amount in controversy requirement it met. *Id.* at 158.

In considering a motion for remand, "[t]he question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties." *Brill v. Countrywide Home Loans*, 427 F.3d, 446, 448 (7th Cir. 2005). "That the plaintiff may fail in its proof, and the judgment be less than the threshold . . . does not prevent removal." *Id.*[4]

### 2. *Likely to exceed CAFA threshold*

The November 6 filings support a finding that the amount in controversy likely exceeds CAFA's threshold. The Giles declaration alleges that there were 462 cases in Butler County, Ohio in the past two years in which Defendant received "refunded court

---

[4] *See also Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (removing party's "burden of describing how the controversy exceeds $5 million" is "a pleading requirement, not a demand for proof. Discovery and trial come later.").

costs" and that those "refunded costs" totaled $197,981.67. (Doc. 18, Ex. A at ¶¶ 2-3, 5).

### a. "Failed to return to or on credit", "court costs" to "borrowers"

Plaintiff argues that the number cited in the Giles declaration is irrelevant for determining the amount in controversy because it does not account for whether Defendant "failed to return to or credit" any of the alleged "refunded court costs" to its "borrowers." (Doc. 25 at 14).

The Complaint and the Amended Complaint both allege that Defendant purportedly "engaged in a common scheme or course of conduct in its practice of receiving the refunded court costs and failing to refund or credit back those "court costs" to its "borrowers." (Doc. 6 at ¶ 46(d)(1)). In other words, Plaintiff alleged that the "refunded court costs" received by Defendant were not "refund[ed] or credit[ed] back" to "borrowers." Therefore, Plaintiff's own allegations place the amount of "refunded court costs" in the Giles declaration "in controversy." *Schiller v. David's Bridal, Inc.*, No. 1:10cv616, 2012 U.S. Dist. LEXIS 80776, at *6 (E.D. Cal. July 14, 2010) ("amount in controversy is determined by universe of what the plaintiff puts at-issue in the complaint").

### b. Liability

Additionally, Plaintiff argues that the amount of the alleged "refunded court costs" is irrelevant because Defendant does not admit liability for this amount. (Doc. 25 at 14-15). However, the relevant inquiry is whether the amounts are "in controversy," not

-12-

whether Defendant admits anything or whether Plaintiff will ultimately prove an entitlement to those amounts. *Brill*, 427 F.3d at 448. Defendant need not admit liability in order to remove. *Id.* Rather, Defendant is entitled to rely on the allegations in the Complaint, the Amended Complaint, and the November 6 filings, in which Plaintiff put alleged amounts exceeding CAFA's threshold "in controversy."

### c. Speculative

Finally, Plaintiff argues that the November 6 filings do not support removal because Defendant's calculations of the amount in controversy are "speculative" and "lack[] support." (Doc. 25 at 16). However, the November 6 filings put $197,981.67 "in controversy" for one Ohio county over the last two years. Ohio has 88 counties. Multiplying $197,981.67 by 88 produces a total amount in controversy of $17,414,466.96 for Ohio alone over just the past two years. This number exceeds CAFA's $5 million threshold.

Courts routinely rely on such basic multiplication to determine whether the aggregate claims of a putative class likely exceed CAFA's threshold. For example, in *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 939 (8th Cir. 2012), the Eighth Circuit affirmed the denial of a remand motion in a putative class action where the plaintiff alleged that a title insurer had retained excess recording fees in real estate closings in 17 states. The complaint alleged that the insurer had collected a recording fee from Missouri residents along with more than 71,000 transactions, which multiplied by 17 (the total

number of states) yielded 1,207,000 transactions. *Id.* As a conservative estimate, the court multiplied half of this number by $12, the average of the putative class representatives' overcharges, which yielded $7,242,000. *Id.* at 946. The court found that CAFA's threshold was "easily satisfied." *Id.*

The instant case presents a more straightforward calculation than in *Hartis*, because the alleged claims in Ohio alone exceed CAFA's threshold. That number would increase greatly if multiplied by the total number of states encompassed by Plaintiff's putative class and would grow even larger if accounting for Plaintiff's entire 15-year class period. Additionally, Plaintiff requests injunctive and declaratory relief, punitive damages, and attorneys fees. The value of this requested relief must also "be considered in determining the amount in controversy." *DeWeese v. Big O Tires*, No. 3:09cv57, 2009 U.S. Dist. LEXIS 37100, at *2 (S.D. Ohio Apr. 29, 2009). Although Defendant denies that Plaintiff or the putative class members are entitled to any recovery in this case, Plaintiff's request for these remedies places them "in controversy."

Therefore, Defendant has provided ample evidence that the alleged amount in controversy exceeds CAFA's $5 million threshold.

    **C.**    **Waiver**

Finally, Plaintiff argues that Defendant waived its right to remove by purportedly taking "substantial offensive and defensive actions in state court." (Doc. 25 at 17). Specifically, Defendant filed a motion to dismiss in state court in June, answered the first amended complaint in September, and moved to strike the class allegations in the first

amended complaint in October.  (*Id.* at 17-18).

However, a defendant cannot waive its right to remove "when there is an absence of notice of the right."  *Haines v. Procter & Gamble Mfg. Co.*, No. 02-CV-2103, 2002 U.S. Dist. LEXIS 14068, at *2, n. 11 (D. Kan. June 25, 2002).  Defendant lacked notice of removability until November 6, 2012, removed the case promptly after that date, and did not participate in any subsequent state court proceedings.  The statute provides unambiguously that a case may be removed within 30 days after a filing first indicates that the case is removable.  28 U.S.C. § 1446(b)(3).  Accordingly, Plaintiff's waiver argument fails.

## IV.    CONCLUSION

CitiMortgage Inc. has established by a preponderance of the evidence that: (1) the putative class consists of at least 100 numbers, (2) the citizenship of at least one putative class member differs from CMI's citizenship; and (3) the aggregate classwide amount in controversy exceeds $5 million.  Accordingly, this Court has original jurisdiction of this civil matter and Plaintiff's motion to remand (Doc. 25) is **DENIED**.

**IT IS SO ORDERED.**

Date: 1/11/13                                                             *s/ Timothy S. Black*
                                                                          Timothy S. Black
                                                                          United States District Judge