UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CRAIG COWIT,

    Plaintiff,

vs.

CITIMORTGAGE, INC.,

    Defendant.

Case No. 1:12-cv-869

Judge Timothy S. Black

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS (Doc. 9)**

This civil action is before the Court on Defendant's motion to strike class allegations (Doc. 9), and the parties' responsive memoranda (Docs. 15, 23, 32, 34, 37, 40). The Court heard oral argument on March 6, 2013.

    **I.    FACTUAL BACKGROUND <u>AS ALLEGED BY PLAINTIFF</u>**

Plaintiff entered into a note and mortgage with Defendant which required him to pay any costs or expenses actually incurred by Defendant in enforcing these instruments. (Doc. 6 at ¶¶ 34-36). After Plaintiff failed to make payment under the note, Defendant initiated a foreclosure pursuant to the terms of the note and mortgage. (*Id.* at ¶¶ 24-25). In connection with the foreclosure, Defendant paid certain court costs. (*Id.* at ¶ 25). During the course of the foreclosure, Plaintiff entered into a contract to sell his real property and received a "Pay Off Letter" from Defendant setting forth the amount to be paid, including court costs. (*Id.* at ¶¶ 28-30). After the dismissal of the foreclosure, the clerk of courts paid Defendant's counsel $33.00 for refunded court costs. (*Id.* at

¶ 31).  The refunded court costs are not costs or expenses actually incurred in enforcing the note and the mortgage since they were refunded to Defendant, its agent, or counsel. (*Id.* at ¶ 37).  However, contrary to the representations Defendant made in the note and mortgage, which were reiterated in the Pay Off Letter, Defendant did not return or credit back to Plaintiff's account the refunded court costs.  (*Id.* at ¶ 33).

Defendant has allegedly made and continues to make the same representations to its borrowers in all of its mortgage loans.  (Doc. 6 at ¶ 38).  Defendant has engaged and continues to engage in the same common scheme and course of conduct of not refunding or crediting back to borrowers the refunded court costs returned to it in connection with court actions.  (*Id.* at ¶ 39).  Defendant promises and represents to borrowers that they will only be liable for costs actually incurred.  (*Id.*)  Instead, Defendant wrongfully, intentionally, and illegally does not refund or credit back the refunded court costs refunded by the courts to Defendant  (*Id.*)  Plaintiff maintains that in addition to violating the terms of the note and the mortgage drafted by it, Defendant's practice also violates the law and wrongfully appropriates the borrower's money.  (*Id.* at ¶ 40).

Plaintiff's complaint includes class claims.  The proposed class includes: (i) borrowers of CitiMortgage in the United States and, separately, Ohio; (ii) who paid court costs (standard policy under CitiMortgage's loan documents); (iii) CitiMortgage or its counsel received a refund; and (iv) such refund was not returned to the borrower. Defendant moves to strike the class allegations.

## II.     STANDARD OF REVIEW

"The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011).

A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011). *See also Rikos v. Proctor & Gamble Co.*, No. 1:11cv226, 2012 U.S. Dist. LEXIS 25104, at *3 (S.D. Ohio Feb. 28, 2012). A court may properly strike class allegations prior to discovery where discovery would not have "alter[ed] the central defect in th[e] class claim." *Id.* at 949 (affirming the district court's judgment striking class allegations and dismissing a lawsuit prior to discovery, finding that the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering."). In fact, this Court has previously struck class allegations where the class could not be certified as defined and "no proffered or potential factual development offer[ed] any hope of altering that conclusion." *Rikos,* 2012 U.S. Dist. LEXIS 11564 at 4.[1]

---

[1] Fed. R. Civ. P. 12(f) permits a court to strike from a pleading "an insufficient claim or defense or any redundant, immaterial, impertinent or scandalous matter … on motion made by a party either before responding to a pleading, or if a response is not allowed, within 21 days after being served with the pleading." Plaintiff argues that the motion was filed outside of the 21 day

## III. ANALYSIS

Rule 23 governs class actions brought in federal courts. To obtain class certification a Plaintiff must meet all of the following prerequisites of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Pilgrim*, 660 F.3d at 945. Once the Rule 23(a) requirements are satisfied, a party seeking class certification must also show that the proposed class is maintainable under one of the three provisions of Rule 23(b).

Defendant claims that class allegations should be stricken because: (1) determining membership in the putative class and subclass would require highly individualized inquiries, and thus the alleged class and subclass are indefinite and ambiguous; (2) the alleged class and subclass cannot satisfy any of the requirements of Rule 23(b); (3) Plaintiff's claims cannot satisfy the commonality requirement in Rule 23(a)(2); and (4) Plaintiff allegedly paid off his loan to Defendant, so he cannot seek

---

period allowed pursuant to Rule 12(f) because Defendant's motion to strike was filed after its "responsive pleadings" to the first amended complaint. (Plaintiff filed his first amended complaint on May 9, 2012, CitiMortgage filed its answer on September 24, 2012, after its motion to dismiss was denied on September 6, 2012, and then filed its motion to strike on October 3, 2012, almost five months after filing of the first amended complaint.) However, the Court finds that the motion was brought under Ohio Civ. R. 23(D)(4) and its federal counterpart Fed. R. Civ. P. 23(d)(1)(D), neither of which contains any time limit. *See, e.g., Bennett v. Nucor Corp.*, No. 3:04cv291, 2005 U.S. Dist. LEXIS 44117, at *7 (E.D. Ark. July 6, 2005) (court held that "[a] motion to strike class allegations is governed by Rule 23, not Rule 12(f)."). Therefore, the motion to strike class allegations was timely filed.

prospective relief against Defendant and cannot adequately protect the interests of the putative class members who are currently in default.

### A. Indefinite and Ambiguous

First, Defendant argues that determining membership in the putative class and subclass would require highly individualized inquires and thus the alleged class and subclass are indefinite and ambiguous.

#### 1. *Ascertainable*

Before analyzing the requirements of Rule 23(a), a court should first consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class. *Berger v. Cleveland Clinic Found.*, No. 1:05-cv-1508, 2007 U.S. Dist. LEXIS 76593, at *23 (N.D. Ohio Sept. 29, 2007). Though not an express requirement of Rule 23, "ascertainability goes to whether the class has been defined such that it encompasses an identifiable group." *Stuart v. Cheek & Zeehandelar*, 252 F.R.D. 387, 391 (S.D. Ohio 2008). The "touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership." *Id.*

Defendant maintains that determining membership in the putative class and subclass would require an individualized examination of thousands of individuals. (Doc. 6 at ¶ 46(c)).[2] Specifically, the determination would require an individualized analysis of whether: (1) each individual was a "borrower"; (2) who was charged and paid "court

---

[2] *See also, Pipefitters Local*, 654 F.3d at 631 (reversing certification that would have required court "to conduct individualized inquiries" into contracts of hundreds of class members).

costs" by Defendant; (3) a portion of which was refunded to Defendant or "its agents or counsel"; and (4) Defendant failed to pay the "borrower" for that "refunded" portion of the "costs." (*Id.* at ¶ 43). Defendant claims that these determinations would require an in-depth examination of individual records, including loan documents, communications between Defendant, borrowers, and third parties, such as foreclosure counsel, and court documents of varying availability and accessibility filed in jurisdictions around the country. (Doc. 32 at 9).[3]

The Court finds that whether a particular individual is a member of the class can be determined by reference to four factors, all of which can be determined from Defendant's own records: (1) was the person a borrower; (2) who was charged court costs in connection with a court action; (3) was a portion of those court costs refunded to Defendant or its agent; and (4) did Defendant fail to pay the refund to the borrower. *Hofstetter v. Chase Home Fin., LLC*, No. 10-01313, 2011 U.S. Dist. LEXIS 38124, at *12, 14 (N.D. Cal. March 31, 2011) (classes are sufficiently definite when "[a]ll the

---

[3] Defendant relies on *Cerdant* and *Romberio* to support its argument, both of which are distinguishable from the instant case. In *Cerdant, Inc. v. The Laptop Guy*, No. 2:08cv186, 2010 U.S. Dist. LEXIS 95087, at *8-10 (S.D. Ohio Aug. 25, 2010), critical to the court's finding that the putative class was unascertainable was that the class was overbroad because it failed to be limited to those members who complied with certain statutory requirements before filing a claim, and, as a result, the court would have to engage in an individualized inquiry into the facts related to each class member (as opposed to the defendant's records) to determine those putative class members who complied with the statutory requirements. *Id.* at 17-18. *Romberio* is also inapposite because in reversing the lower court's grant of class certification, the Sixth Circuit emphasized that plaintiffs were challenging a "group of loosely defined practices that were not applied uniformly to a discrete, easily defined class of individuals." *Romberio v. UnumProvident*, 385 F. App'x 423, 425, 430-31 (6th Cir. 2009) (reversing certification because "the only way" to determine membership in the certified class was "to engage in individualized fact-finding"). Moreover, it is important to note that both of these cases were decided at the class certification stage, while the instant case is still pre-class certification.

parameters for membership in th[e] class are objective criteria, and defendant['s] business records should be sufficient to determine the class membership status of any given individual.").

Accordingly, the Court finds that the case is objectively defined and ascertainable.

2. *Unambiguous*

Next, Defendant argues that Plaintiff's class and subclass are ambiguous because of the use of terms such as "court costs" and "court actions."  *See, e.g., Avila v. Van Ru Credit Corp.*, No. 94-C-3234, 1994 U.S. Dist. LEXIS 16345, at *2 (N.D. Ill. Nov. 14, 1994) (denying certification to class of residents who received collection demand "similar to" those attached to the complaint because definition was ambiguous). While the Court finds that the descriptions of the class and subclass are somewhat obvious from the context, they could be definite.  The class definitions must be sufficiently definite so that a particular individual's membership in the class requires no individual inquiry.  However, the Court declines to strike the class allegations, when it could just simply require Plaintiff to supplement the class definitions.  *See, e.g., Powers v. Hamilton Cnty. Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions"); *In re Monumental Life Ins. Co*., 365 F.3d 408, 414 (5th Cir. 2004) ("district courts are permitted to limit or modify class definitions to provide the necessary precision").

7

In an effort to alleviate any uncertainty, Plaintiff shall confer with Defendant regarding the ambiguity of the class definitions and supplement them where required.[4]

### B. Requirements of Rule 23(b)

Plaintiff must establish that a class action is maintainable under one of the three prongs of Rule 23(b). Defendant argues that Plaintiff cannot maintain a class under any of the Rule 23 prongs. Plaintiff submits that the class and subclass are certifiable under all three.

#### 1. *Rule 23(b)(1)(A)*

A Rule 23(b)(1)(A) class action is appropriate when separate actions would create incompatible standards of conduct for the party opposing the class, or when the interests of the members not parties to the litigation would be impeded by individual adjudications. *See, e.g., In re Bendictin Products Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1994) (if inconsistent declarations of liability could result from separate actions, certification of a class may be appropriate).

Defendant argues that separate actions by individual putative class members would not create any "incompatible standards of conduct" because this is a damages action, and individual damage suits could not create incompatible standards of conduct. Additionally, Defendant argues that there is no uniform contract at issue, but rather many different contracts depending on the state at issue, and accordingly it would be improper to generalize that there will be inconsistent verdicts when there are so many

---

[4] For example, Plaintiff shall more clearly define terms like "borrowers" (*i.e.*, residential or commercial). In fact, at oral argument, Plaintiff conceded that it could limit "borrowers" to residential only.

individualized issues because of differing contracts. However, the Court finds it premature to resolve the issue of whether what presents in numerous differing contracts or predominately standard contracts. Moreover, while inconsistent verdicts in individual actions may not create any incompatible standards of conduct with respect to damages, individual actions to decide the propriety of the requested injunction could create incompatible standards of conduct.

Nonetheless, the Court finds it unlikely that the class could be certified under Rule 23(b)(1)(A),

### 2. *Rule 23(b)(2)*

In a Rule 23(b)(2) class action, the plaintiff must seek primarily injunctive or declaratory relief. Certification under Rule 23(b)(2) is appropriate only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The putative class and subclass cannot be certified under Rule 23(b)(2) because the monetary relief is "not incidental to the injunctive or declaratory relief." Plaintiff concedes that he seeks "money damages that require individualized analyses" for each class member. (Doc. 34 at 14). However, as the Supreme Court has held: Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). Rule 23(b)(2) certification is inappropriate "where individualized determinations are necessary." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423,

432 (6th Cir. 2009). Because individual "class members do not have an automatic right to notice or a right to opt out" of a Rule 23(b)(2) class, courts require "homogeneity" between the claims of putative class members in such a class. *Id.* Otherwise, unnamed class members may be prejudiced and the case would become "unmanageable." *Id.* at 433.

Accordingly, the Court finds that the holding in *Dukes* is fatal to class certification under Rule 23(b)(2).

### 3. Rule 23(b)(3)

In a Rule 23(b)(3) class action, common questions of law or fact must predominate over any issues affecting only individual members.

#### i. Predominance requirement

To satisfy the predominance requirement of Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to all class members predominate over any questions affecting only individual members." *Pilgrim*, 660 F.3d 946. The court must determine if the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability has been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render

the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001).

Defendant argues that Plaintiff fails to meet the predominance requirement because of the prevalence of individualized issues over common ones. Defendant argues that "proof of actual injury caused by the alleged wrongdoing" can only be determined in this case based on an examination of the specific documents and individual circumstances related to each putative class member, including: (1) the individual's note and mortgage; (2) the docket or other court records in the individual's court case; and (3) any purported 'payoff letter' or communications with Defendant's local counsel. Defendant maintains that such a case cannot satisfy the predominance requirement.[5]

Here, there are no individualized facts related to class members' conduct or state of mind. There is no conduct which implicates any class member – the only conduct in this case is Defendant's conduct in allegedly retaining refunded court costs which belonged to the Plaintiff. Defendant's conduct remains the same: did it retain refunded

---

[5] *See, e.g., Pettrey v. Enterprise*, 241 F.R.D. 268, 284 (N.D. Ohio 2006) (individual issues predominated with respect to the negligent misrepresentation and state consumer protection statute claims because the only common element was "the existence of a false statement" and "[e]very other element would require individualized proof.").

11

court costs which belonged to Plaintiff.[6] Moreover, while there are clearly individual facts to acquire with respect to each plaintiff, these individual facts do not require an individual "analysis" per se, at least not based on the information presented to the Court at this point in the litigation.[7]

The class involves a single common issue-- did Defendant knowingly fail to refund or credit refunded court costs to its most vulnerable borrowers.[8] In order for the Court to determine class membership there do not appear, at this stage in the litigation, any individualized facts that relate to class members' conduct or state of mind and the only documents that need to be examined are Defendant's and/or foreclosure counsels'

---

[6] Defendant cites *Cancino* to support its argument, but *Cancino* is distinguishable because it focused on the subjective factors affecting reliance, causation, and damages, and no such subjective factors exist in this case. *Cancino v. Yamaha Motor Corp*, No. 3:04cv274, 2010 U.S. Dist. LEXIS 76645, (S.D. Ohio June 24, 2010). The only factor at issue in the instant case relates to Defendant's common practice and Defendant cannot assert that class members should have differing subjective understandings about being charged for costs and expenses not incurred. Similarly, Defendant cites *Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000), where the court refused to certify the class because of the necessity of evaluating subjective factors related to the plaintiffs and the class members in order to determine membership in the class. *Id.* at 717. Such subjective factors included the type of car purchases, the degree of repairs necessitated, the response to those repairs, the purpose for which the car was purchased, the individual circumstances and transactions surrounding each purchase, including each class member's understanding of the terms and conditions of their purchase agreements, and the extent of the injury suffered.

[7] At the class certification stage, and after representative discovery, the Court will be required to evaluate this issue again and the evidence disclosed through initial discovery may well effect the predominance requirement.

[8] *See, e.g., Bowers v. Windstream Ky. E., LLC*, No. 3:09cv440, 2012 U.S. Dist. LEXIS 95817 (W.D. Ky. July 11, 2012) (certifying a class of customers of telecommunications companies who were wrongfully charged a surcharge (the "GRS"), the court stated: "the overarching questions in this case are whether, and to what extent, Defendants wrongfully charged the GRS to customers [.] This issue is common to all Proposed Class members and can be resolved by focusing only on Defendants' conduct[.]").

12

records in connection with the court actions. The common issue in this case is Defendant's conduct, and that issue predominates.

### ii. Nationwide Class

Next, Defendant argues that the putative nationwide class cannot satisfy Rule 23(b)(3)'s predominance requirement because the consumer protection and common law claims at issue cannot be resolved on a nationwide basis due to the considerable variation in the state laws governing these claims. This Court reached a similar conclusion in *Rikos*, holding that state law consumer protection and express warranty claims could not be certified on a nationwide basis. *Rikos*, 2012 U.S. Dist. LEXIS 11564 at 3-6.[9]

The same is true for Plaintiff's common law claims.[10] Each putative class member's common law claims would likely be governed by the state in which the property securing the loan was located. Plaintiff does not deny that the Court would need to apply the laws of different states in the putative nationwide class action, nor does he deny that those laws vary across jurisdictions. Therefore, the Court concludes that

---

[9] *See also Pilgrim*, 660 F.3d at 945-47 (applying Ohio's choice-of-law rules, "the consumer-protection laws of the potential class members' home States will govern their claims" and "the consumer-protection laws of the affected States will govern their claims" and "the consumer protection laws of the affected States vary in material ways."). Plaintiff argues that *Pilgrim* is contradicted by a decision of an Ohio appellate court. *See Cowit v. Cello P'ship*, 911 N.E.2d 300 (Ohio Ct. App. 2009)). However, even if *Cello* contradicted *Pilgrim*, the Sixth Circuit's decision in *Pilgrim* is controlling here. Additionally, *Cello* involved only a simple breach of contract claim – alleging that all customers paid for a service they did not receive – that could easily be adjudicated on a common basis.

[10] Plaintiff alleges common law claims for: (1) breach of contract (including covenant of good faith and fair dealing); (2) fraud; (3) promissory estoppel; (4) unjust enrichment; (5) conversion; and (6) negligent misrepresentation. Considering, for example, unjust enrichment, "[t]he elements necessary to establish a claim for unjust enrichment also vary materially from state to state." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012).

Plaintiff's nationwide class claims for: (1) fraud; (2) promissory estoppel; (3) unjust enrichment; (4) conversion; and (5) negligent misrepresentation, fail due to the considerable variation in the state laws governing them.[11]

However, claims arising from the interpretation of a form contract are particularly suited for class treatment, and breach of contract cases are routinely certified as such. *Wu v. Pearson Educ. Inc.*, 277 F.R.D. 255, 265 (S.D.N.Y. 2011).[12] Therefore, Plaintiff's nationwide breach of contract claim survives.[13]

### iii. Superiority

Next, Defendant argues that the putative class and subclass cannot be certified under Rule 23(b)(3) because a class action is not superior to individual actions. The Court must find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). *See also, Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997) ("A class action solves this problem [of small individual recoveries] by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). Defendant claims that because the Court would need to conduct individualized examinations of each putative class member's claims in order to determine class membership and liability, the case

---

[11] In fact, in oral argument Plaintiff conceded that it would drop all nationwide class claims but for the breach of contract claim.

[12] *See also Jimenez v. AllState Indem. Co.*, No. 07-14494, 2010 U.S. Dist. LEXIS 95993, at *16 (E.D. Mich. Sept. 15, 2010) (certifying class in insurance dispute involving interpretation of contract).

[13] The Court will reexamine any issue related to the number and variance in contracts at the class certification stage, after representative discovery.

would be unmanageable as a class action, and thus not a superior method for resolving the claims at issue.[14]

The Court finds, however, that this action provides an efficient vehicle for the resolution of a single controversy affecting thousands of class members in a single proceeding. Class members are not likely to file individual actions because they are not aware that court costs have been refunded and the cost of litigation would dwarf any potential recovery. *See also In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 420 (6th Cir. 2012) (*citing Amchem*, 521 U.S. at 617 (finding that in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'").[15] Thus, given the facts of this case, the Court concludes that class action is superior to individual actions.

### C. Commonality Requirement

Commonality requires plaintiffs to demonstrate that the class members have suffered the same injury. *Dukes*, 131 S. Ct. at 2551. The claims must depend upon a

---

[14] Additionally, Defendant argues that existing Consent Agreements largely overlap with the putative class and subclass alleged in the instant complaint and are thus a superior alternative to litigation. *See also Manson v. GMAC*, 283 F.R.D. 30, 41-42, n. 32 (D. Mass. 2012) (denying certification and noting that the April 2012 Consent Judgment "largely overlap[ped]" with the class allegations). Here, however: (1) the Consent Agreements do not provide restitution to class members and no resolution procedure was set up to address Plaintiff's claims; (2) no settlement was provided to the putative class under the Consent Agreement; and (3) there are no funds specifically allocated to the wrongful practice at issue because it was not contemplated at the time of the Consent Agreements.

[15] *See also, Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic would sue for $30").

15

common contention that is of such a nature that it is capable of class wide resolution. *Id.* To satisfy the commonality requirement, there need be only a single issue common to all members of the class. *In re: Am. Med. Sys.*, *Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996). "What matters to class certification…is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

As this Court has already discussed (*See* Section III.B.3.i), Defendant engaged in a single common course of conduct in allegedly retaining the refunded court costs that are the property of the borrowers. The common questions of fact are whether: (1) Defendant charges delinquent borrowers for court costs (according to loan documents it does); (2) Defendant received a refund of a portion of those court costs (Plaintiff has identified at least 237 such cases in Ohio); and (3) Defendant failed to refund or legally credit that portion to the putative class member. These issues call for a class wide resolution – return of the refunded court costs. Either Defendant returns the refunded court costs to the borrowers or it does not. The Court need not make a factual determination of the subjective issues related to the conduct of class members for their inclusion in the class, instead the class and subclass are based on Defendant's own objective common conduct and facts in its records. The nature of damages is also common to the class and subclass. Plaintiff and class members have not received the refunded court costs that belong to them due to an alleged breach of contract and as a result of Defendant's practices. All of these individuals were subject to similar loan documents and the same breach of contract. These overriding questions of fact common to all class members control.

16

### D. Plaintiff Must Adequately Protect The Interests Of The Puntative Class

Finally, Plaintiff must show that he will fairly and adequately protect the interests of the class. Class representatives must not have interests that are antagonistic to one another. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2nd Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993).

Plaintiff lacks standing to seek prospective relief and thus cannot represent the interests of those putative class members who are currently in default and who might seek declaratory or injunctive relief. Specifically, Plaintiff alleges he paid off his loan to Defendant (Doc. 6 at ¶ 29), so he is not at risk of any future harm from Defendant's alleged practices, and he therefore lacks standing to seek prospective relief. *See, e.g., Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (holding plaintiffs, who were no longer residents, did not have standing to sue for injunctive relief on behalf of present and future residents of the mental health facility); *Smook v. Minnehaha Cnty.*, 457 F.3d 806, 817 (8th Cir. 2006) (finding named representative, and therefore, class certified by the district court lacked standing to seek injunctive relief).[16] "[I]f the court has reason to conclude that a plaintiff has neglected or will neglect the claims for injunctive relief in his pursuit of his damage claims, it may find him an inadequate representative." *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982).

If Plaintiff has no stake in whether injunctive relief is awarded or not, he will not be particularly interested in that aspect of the case, and his lack of interest would be

---

[16] *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (demonstrating necessity of future harm for equitable standing).

antagonistic to those who might benefit from injunctive relief.  Because Plaintiff no longer suffers the harm he alleges, and it is unlikely he will suffer such harm in the future, he does not have standing to pursue a prospective injunction on behalf of himself or the proposed class.[17]

At this stage in the litigation the Court declines to strike the class allegations for injunctive relief for failure to appoint an appropriate class representative.  Rather, Plaintiff maintains that it can, and the Court orders that it shall, cure this deficiency forthwith.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion to strike (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, Plaintiff's *nationwide* class allegations for: (1) fraud; (2) promissory estoppel; (3) unjust enrichment; (4) conversion; and (5) negligent misrepresentation are hereby **STRICKEN**.  All other class allegations survive at this stage in the litigation.

Additionally, Defendant's motion to stay discovery pending resolution of the motion to strike (Doc. 12) is now **DENIED** as **MOOT**.[18]  Plaintiff's motion to strike

---

[17] This does not, however, affect Mr. Cowit's adequacy as a representative to pursue all other damages requested.  Mr. Cowit, like all other class members, has not been repaid the refunded court costs charged by Defendant and seeks to enjoin Defendant from continuing to keep the refunded court costs.  The fact that Mr. Cowit or some class members may have repaid their loan is irrelevant to the issue of whether Defendant failed to refund court costs returned to it or its agent after dismissal of a court action.

[18] The parties shall meet and confer and present a revised 26(f) Report.  The Court is hopeful that the parties will reach a resolution regarding the production of representative discovery which would obviate the Court's need to rule on the pending discovery motions.  (*See* Docs. 8, 11).  The Court will address any outstanding discovery issues at the preliminary pretrial conference.

insufficient answers (Doc. 10) is also **DENIED** as **MOOT**, since Plaintiff is required to file a second amended complaint as reflected here.

This Order is contingent on Plaintiff: (1) conferring with Defendant in an effort to more clearly define the class; and (2) naming a proper class representative forthwith.

**IT IS SO ORDERED**.

Date:  March 8, 2013                                         *s/ Timothy S. Black*
                                                             Timothy S. Black
                                                             United States District Judge